STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
JOEY L. BLANCH (Cal. Bar No. 186487)
Assistant United States Attorney
Violent & Organize Crime Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3315
     Facsimile: (213) 894-3713
     E-mail:    joey.blanch@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,   | No. CR 05-70-PSG |
|---|---|
| Plaintiff, | GOVERNMENT SENTENCING POSITION ON SUPERVISED RELEASE VIOLATION |
| v. | |
| ALAN CRAIG RICHARDS, | SENTENCING DATE: 11-24-14 |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Joey L. Blanch, hereby files its sentencing position regarding the supervised release violation of defendant Alan Craig Richards. This position is based on the violation report of the Probation Office, as well as the files and records of this case.

1 | Dated: November 18, 2014

Respectfully submitted:

STEPHANIE YONEKURA
Acting United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


           /s/
_____
JOEY L. BLANCH
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  Introduction**

Defendant has a long history of sexually predatory behavior with children.  He has multiple convictions for indecent exposure involving victims ranging from 10 to 14 years old; on one occasion he showed the girls his penis and told them to "suck it;" on another occasion he approached an 11-year-old girl in a park while entirely nude and tried to touch her.  Defendant's most recent conviction involved his attempt to spirit a 12-year-old girl named "Julie" away from her mother in Los Angeles, and bring her from California to his home in Iowa to engage in sexual acts he explicitly described to her in his Internet communications.  Fortunately, Julie was an undercover FBI agent, not an actual 12-year-old girl.  However, the investigation into his crimes with Julie determined that defendant was having similar communications with a number of actual minors, including phone sex, masturbation, exchange of nude photographs, and pressure to meet and have sex in person.

On supervised release, defendant is strictly prohibited from unsupervised association with children, and from visiting parks, playgrounds, or other areas where children may congregate.  However, defendant has blatantly disregarded these restrictions.  In 2013, defendant approached a young girl on a bus, speaking with her about inappropriate subjects such as whether she had a boyfriend.  Although the Court imposed 120 days of home detention for this violation, it appears to have had no impact on defendant's behavior.  Now, defendant has violated again – and again, the violation involves contact with children.  This time, defendant lied to the mother of a 6-year-old boy about the nature of his prior conviction in order to

gain access to the child, then walked hand-in-hand with him to a playground. He also lied about the contact children to the probation officer.

On a supervised release violation, the Court may not incarcerate the defendant in order to further punish defendant for past offenses. But the Court is not required to wear blinders regarding these offenses. Here, defendant's prior convictions put what might otherwise be considered minor supervised release violations into a much more nefarious context, and illustrate the danger defendant poses to the community. The government agrees with the Probation Office that defendant should be sentenced to 36 months incarceration, followed by a 10-year period of supervised release.

**II. Facts**

    **A.   1974: Defendant Arrested for Assault to Commit Rape Near a Park**

In 1974, two female college students went into the woods to relieve themselves. Defendant chased them and grabbed them between their legs, on their buttocks, and breasts, telling them that he "knew what they were after." PSR ¶ 89. Although defendant was arrested by Iowa police for assault to commit rape, there is no record that he was convicted of this crime or why charges were dismissed.

    **B.   1986: Defendant Convicted for Masturbating In Front of a 14-year-old Girl in a Park**

In 1986, a 14-year-old girl was walking her dog near a park when she spotted defendant. He was sitting in his car, naked and masturbating, while he started at her. As a result, defendant was convicted for indecent exposure. PSR ¶ 70-72.

  **C.** **<u>1988: Defendant Convicted for Showing 10- and 11-Year Old Girls His Penis and Asking Them to "Suck it" Near a School</u>**

  In September 1988, three girls were walking home from school when defendant came out from some bushes. He took out his penis, shook it at them, and told them to "suck on this." They ran away and called the police. The next day, defendant saw the girls walking to school and told them he was going to "get them." One of the victims was 10 years old; another was 11 years old. As a result, defendant was convicted for indecent exposure. PSR ¶ 73-75.

  **D.** **<u>1988: Defendant Convicted for Exposing his Penis to Two Minors, One 11-Years-Old</u>**

  In October 1988, defendant approached two minor girls – one 11 years old – as they were walking home. He spoke to them and dropped is pants, exposing his penis. When they tried to run home, he followed them and stood in front of the house of one of the victims until they managed to get inside. As a result, defendant was convicted for indecent exposure. PSR ¶ 76-78.

  **E.** **<u>1990: Defendant Convicted for Approaching an 11-Year-Old Girl While Nude at a Park</u>**

  In 1990, an 11-year-old girl was walking through a park. As she neared the restrooms, defendant stepped out, completely nude, but for a cap and sunglasses. He reached out to touch her, but he only touched her leg before she ran away. As a result, defendant was convicted for indecent exposure. PSR ¶ 82-84.

  **F.** **<u>2005: Defendant Convicted for Traveling to Meet a 12-Year-Old Girl for Sex</u>**

  In January 2005, when defendant was 54 years old, he traveled from Iowa to Los Angeles to pick up "Julie," a 12-year-old girl he had met on the Internet, and bring her back to Iowa for sex. Defendant met Julie in October 2004, in an online chat room. Julie

introduced herself as a 12-year-old girl, who lived in Los Angeles. Defendant introduced himself as a 33-year-old man who lived in Iowa. Over the next few months, defendant communicated with her via the Internet and the telephone, attempting to persuade her to run away from her mother and meet him for sex. Defendant's communications with Julie included asking her if she was a virgin, sending her photographs of his penis, asking her if she would sleep with him, indicating he could enhance her breast development by sucking on them, assuring her that she would not get pregnant because he wouldn't leave anything insider of her when they had sex, and promising to teach her how to perform both oral sex and a variety of intercourse positions.

    When Julie finally agreed to leave home and live with him in Iowa, he drove all the way from Iowa to Los Angeles to pick her up. In planning how to get away with this crime, he advised Julie that she should start gathering the clothing she wanted to bring to Iowa but she should hide it under the bed so her mother would not notice, admonished her not to tell anyone of their plans because the police would likely interview her friends, and discussed changing her appearance to avoid detection by people responding to missing persons bulletins and Amber alerts. He also asked that Julie provide him with her AOL password so that he could erase all computer files that could be used to link him with her disappearance. Between January 9 and 10, 2005, defendant drove from Iowa to Los Angeles. During the trip, he telephoned Julie to confirm his whereabouts and provide updates regarding the time and location of the scheduled meetings. They agreed to meet at a mall in West Los Angeles; when he arrived at

the meeting, he spotted Julie and went directly to her and tried to grab her.  PSR ¶ 6-16.

Luckily, Julie was actually an undercover FBI agent.  The girl defendant tried to grab in the mall was the undercover law enforcement officer whose photographs were used when defendant asked "Julie" what she looked like.  When agents searched his car, they found a gold necklace he brought as a gift for Julie, and pills to enhance male erections.  Id.

For his crimes involving Julie, defendant was convicted of enticing a minor to engage in criminal sexual activity and attempting to transport a minor with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. §§ 2422(b) and 2423(a).  On August 15, 2006, he was sentenced to 100 months incarceration.

**G.    2004-2005: Defendant's Child Exploitation Crimes Involved Multiple Children**

After defendant was arrested, a search warrant was conducted on his home in Iowa.  There, evidence was found establishing that he had engaged in similar conduct with other victims – victims who were not undercover law enforcement officers, but who were actually children.  The evidence regarding these victims is detailed in the Presentence Report at paragraphs 40-61. In summary:

1.    Brittany

In approximately April 2004, defendant met Brittany, a 15 year old girl from Nevada, in a "teen romance" Internet chat room.  When defendant contacted Brittany in the chat room, she truthfully told him that she was 15 years old; defendant lied and told her he was 23.  Between April 2004 and January 2005, defendant used the Internet and the telephone to attempt to persuade Brittany to engage in sexual

5

intercourse and oral copulation with him.  He made notes about her in his computer address book, including her age, birthday, telephone number, home town, bra size, and how she groomed her pubic hair.  He e-mailed Brittany a picture of his penis.  He telephoned her on numerous occasions, and engaged in telephone sex; he would tell her to touch her vagina and her breasts, and would moan to her and tell her he was masturbating.  Defendant gave Brittany graphic descriptions of what he wanted to do with her, sexually.  He told her he wanted her to suck his penis, that he wanted to lick and touch her vagina and to lick, touch and suck her breasts.  In defendant's home, they found notes about airports and motels closest to Brittany's home, printed driving directions to her home, and evidence that defendant had researched her high school.

      2.   <u>Kimberly</u>

In approximately June 2004, defendant met Kimberly, a 15-year-old girl living in Pennsylvania, in an Internet chat room.  When he contacted Kimberly, she truthfully told him she was 15 years old.  Defendant lied and told her he was 22 years old.  Between June and October 2004, knowing that Kimberly was only 15 years old, defendant used the Internet and the telephone to attempt to persuade Kimberly to engage in sexual intercourse with him and with a dildo.  Defendant e-mailed Kimberly a picture of his penis; he made notes in his computer address book regarding Kimberly, including her age, bra size, underwear preferences, and how she groomed her pubic hair; he had telephone sex with her approximately eight times; he asked her to meet him in person so he could use a dildo on her, have sex with her, and create child pornography with her.  Law enforcement found driving directions to Kimberly's home when searching defendant's home.

3. Christina

In approximately June 2004, defendant met Christina, a 12-year-old girl in New York, in an Internet chat room called "Times Square." Christina truthfully told defendant that she was 12 years old; defendant lied and told her he was 24 years old. Between June 2004 and November 2004, defendant used the Internet to attempt to persuade Christina to engage in sexual intercourse with him: he e-mailed her photographs of his penis and tried to convince her to send him naked photographs of herself; he spoke with Christina over the telephone, and masturbated while speaking with her; he told her that he wanted to meet in person to have sex so he could "take her virginity." He offered to pick her up at her house and drive her to Iowa to live with him. Defendant's computer address book identifies Christina as as a 12-year old girl and includes notions about her appearance, including bra size.

4. Angelia

In approximately June 2004, defendant met Angelia, a 14-year-old girl from New York. Angelia told defendant that she was 16 years old; in fact she was only 14 years old at the time. Defendant also lied – he told her he was 23 years old. Between June 2004 and December 2004, defendant used the Internet to attempt to persuade her to engage in sexual intercourse with him: he e-mailed Angelia a picture of himself from the waist down, masturbating and he asked Angelia to e-mail him naked photographs of herself. He also told her he would pay for her to leave her home in New York and take a bus to him in the Midwest.

     5.   <u>Carey</u>

In approximately August 2004, Carey was a 16-year-old boy living in Texas. Defendant, believing Carey was a girl, instant-messaged Carey over the Internet. Carey truthfully told defendant that he was under 18 years old; defendant lied and told Carey that he was 33 years old. Carey initially communicated with defendant as a joke, because Carey knew defendant believed him to be a young girl. Defendant persistently demanded that Carey send him nude photographs, defendant sent Carey multiple photographs of his own penis, and insisted on meeting Carey in person to have sex.

### H. May 2013: Defendant Having Inappropriate Contact with a Teenage Girl on a Bus

Defendant completed his 100-month sentence related to his crimes involving "Julie," and began supervised release on April 13, 2012. As part of his conditions of supervised release, defendant is prohibited from any communications with a minor except under narrowly specified conditions, such as when the parents of the minor have been expressly informed of defendant's prior conviction, consent to the communications, and are present to supervise. The reason for this prohibition is clear: defendant has a lengthy history of sexual crimes against minors. However, ignoring the supervised release conditions, in May 2013, defendant approached an approximately 12-year-old girl on a bus. He engaged in her in conversation, such as what school she went to, and whether she had a boyfriend.

When the probation officer discussed this incident with defendant, she expressly reminded him that he was not allowed any contact with minors. Defendant acknowledged that he was not allowed to have contact with minors. As a result, on May 17, 2013, the Court

modified defendant's conditions of supervised release to include 120 days in a home detention program.[1]

### I. Instant Offense: Defendant Took a 6-Year-Old Boy to the Park and Lied About It to the Probation Officer

In addition to prohibitions on communicating with minor, defendant's conditions of supervised release prohibit him from going to parks, schools, playgrounds – any type of facility where children are known to frequent.  Nevertheless, on June 6, 2014, defendant was observed holding the hand of a 6-year-old boy as they walked to a park in downtown Los Angeles.

The probation officer located the boy's mother, who works at a jewelry store near defendant's residence.  The mother stated that defendant had been hanging around the jewelry store for more than a year, and often brings food, candy or drinks to the employees and their children.  He had lied to the mother about his prior conviction, telling her that he had recently served eight years in prison for a drug conviction; he never told her that he was convicted for crimes involving the sexual exploitation of children.

On June 6, 2014, defendant offered to take the 6-year-old boy to the park.  Believing she knew defendant, the mother agreed.

On June 7, 2014 – the next day -- the probation officer met with defendant, and he denied any contact with minors, accidental or otherwise.  This was clearly a lie, indicating that he fully

---

[1] Defendant was also found to be in possession of pornography. Individuals participating in sex offender treatment are often not permitted to view pornography of any kind, as it interferes with treatment.  The Court also added a condition of supervised release prohibiting defendant from viewing or possessing any materials depicting or describing sexually explicit conduct.

understood that he was not allowed to have contact with minors, whether they were boys or girls. Only when the probation officer confronted him with the witness statement about defendant walking with the child to the park did defendant admit that he had engaged in this activity.

## III. ARGUMENT

By taking the child to the park, defendant violated a number of supervised release conditions – he had unsupervised contact with a minor, he failed to inform the child's mother of his conviction (and in fact lied to her about it,) and he went to a park with a child's playground – a place where children congregate. He also lied to the probation officer about his contacts with minors.

Defendant, in his sentencing position, minimizes the significance of his violations as simple "Class C" violations, implying these are technical violations of little import. Defendant is wrong. These are not mechanically imposed conditions; while they are commonly imposed on sex offenders, they are of particular importance for defendant, who has a proven track record of accosting children in public places, including near schools and parks. As a result, it is critical that he not associate with children and he not go to places where children congregate. This has been made clear to defendant by the court and by the probation officer on multiple occasions. That defendant has blatantly ignored these provisions indicates that defendant has no respect for the law, no respect for the court, and no intention of behaving in a way that minimizes the risk he poses to children in the community.

After being caught in his lie, defendant attempted to minimize his violation to the probation officer, stating that he did not

believe it was a problem to take a young boy to the park, as his prior convictions related to his sexual interest in young girls. However, it is not uncommon for sex offenders interested in young children to molest children of both genders, even where they have a general preference for girls or for boys.  More importantly, defendant's excuse ignores the very real fact that having a child with him at the park allows him to get close to any other children who may be at the park – including girls – without being viewed with suspicion by the children's parents.  A man in his 50s, alone and lurking in a children's playground, would commonly be treated with caution and wariness by the caretakers of the children playing there. A man bringing a 6-year-old boy to the playground, however, has an apparently legitimate, even laudable, purpose for being there; other parents would be more likely to lower their guard and trust defendant around their children.  In this manner, defendant can use the presence of a young boy – even if he is not interested in boys - to get close to children he *is* interested in, and gain the trust of their parents.

   Defendant is correct that the Court should not use a supervised release violation to punishment defendant for the conduct underlying the violation.  Title 18, United States Code, Section 3553(a) provides a list of ten factors to be considered in imposing a sentence upon conviction of a criminal offense.  18 U.S.C. § 3553(a). Section 3583(e) incorporates the majority of the factors listed in § 3553(a) as factors to be considered in sentencing upon revocation of probation or supervised release.  18 18 U.S.C. § 3583(e).  Section 3583(e), however, specifically omits § 3553(a)(2)(A), which provides for consideration of "the need for the sentence imposed to reflect

the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. §§ 3553(a). Thus, the Court should not rely on this factor when imposing a term of imprisonment for a supervised release violation. U.S. v. Miqbel, 444 F.3d 1173 (9th Cir. 2006). However, the Court is fully justified in considering the nature and circumstances of the offense, the history and characteristics of the defendant, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from further crimes of the defendant. Id. at 1175, n. 3; 18 U.S.C. §§ 3583(e), 3553(a)(1), 2552(a)(2)(C). The Court can – and should – view the instant violations in context in order to fully assess the danger defendant poses to the community.[2]

Although this is defendant's first Court appearance for violations, it is not his first violation. Like the instant violation, his first violation also involved the unauthorized contact with a minor. That violation was resolved via modification and a Court-ordered a term of home confinement. However, defendant could only be placed on curfew because the probation office could not affix the GPS or even the standard radio frequency monitoring due to swelling on defendant's leg. Clearly, placing defendant on monitoring for a limited period of time did nothing to deter him from having contact with a minor and lying about it to the probation officer, making the instant violation a more serious breach of the Court's trust.

Ignoring the serious danger posed by defendant's release violation, defendant argues that a lengthy term of imprisonment is

---

[2] The Court should set forth the reasons for the sentence on the record. Miqbel, 444 F.3d at 1176.

12

unwarranted because of his health and the risk that prison poses to him.  He specifically claims that he was assaulted in custody because he was incarcerated for a sex offense.  Although the records provided by defendant support that he was injured in prison, nothing in these records supports his contention that the injury was the result of an assault due to the nature of his conviction.  To the contrary, defendant has informed the probation office that he was run over by another inmate in a wheelchair after the Bureau of Prisons staff failed to properly secure the wheelchair.  While defendant argues that the nature of his conviction makes him particularly vulnerable in custody, there is simply no evidence to support the allegation that he is more vulnerable than any other sex offender.

Defendant also complains about his medical conditions.  None of these conditions are new; they were treated by the BOP when defendant served his sentence on his underlying conviction; he was provided with numerous medical procedures while he was in custody.  While he is continuing to experience complications regarding his medical conditions, there is no indication that they cannot be adequately treated by the BOP.

**IV.  Conclusion**

Defendant's supervised release violations – although "only" Class C violations – are egregious.  When viewed as part of defendant's lengthy pattern of behavior involving crimes against children, they indicate that defendant poses a significant danger to the community that he is unwilling to ameliorate by complying with Court-imposed conditions of release.  Therefore, the government agrees with the recommendation of the Probation Office that the Court

impose a sentence of 3 years in custody, followed by an additional 10 years of supervised release.